UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number:  07-22819-CIV-MARTINEZ-BROWN

FEDERAL INSURANCE COMPANY and
EXECUTIVE RISK INDEMNITY INC.,

    Plaintiffs,

vs.

ESTHER SURUJON, JOHN HARKINS and
MERCYHEALTH, INC.,

    Defendants.
_____/

## ORDER GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT MERCYHEALTH INC.'S CROSS-MOTION FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiffs Federal Insurance Company and Executive Risk Indemnity Inc.'s Motion for Summary Judgment (D.E. No. 17) and Defendant MercyHealth, Inc.'s Cross-Motion for Summary Judgment (D.E. No. 20).  Plaintiff Federal Insurance Company ("Plaintiff" or "Federal") and its subsidiary Executive Risk Indemnity, Inc. ("Plaintiff" or "Executive Risk") have filed suit asking this Court to enter a declaratory judgment clarifying the rights of the parties under directors and officers liability insurance policies issued to Defendant MercyHealth, Inc. ("Defendant" or "MercyHealth").  Plaintiffs have moved for summary judgment and Defendant MercyHealth has cross-moved for summary judgment.  Defendants Esther Surujon ("Defendant" or "Surujon") and Defendant John Harkins ("Defendant" or "Harkins") have never responded to either motion.  After careful consideration, the Court grants Plaintiffs' motion for summary judgment and denies Defendant's cross-motion

for summary judgment.

## I.  Relevant Factual and Procedural Background

The facts in this case are undisputed.  Plaintiff Executive Risk issued a Diversified Health Care Organization Directors and Officers Liability Insurance Policy, noted as policy number 8170-0109, to Defendant MercyHealth, Inc. which covered the period of August 19, 2004 until August 19, 2005 ("2004 Executive Risk Policy").  *See* (D.E. No. 17, Exh. 2).  The policy was renewed in 2005 and covered the period from August 19, 2005 through August 19, 2006 ("2005 Executive Risk Policy").  *Id.*, Exh. 1.  Both policies provided for the same coverage and exemptions.

On January 6, 2005, a complaint was filed by nonparty NHP Holding, LLC ("NHP Holding") against MercyHealth and another nonparty, Doctorcare, Inc. in the Eleventh Judicial Circuit in and for Miami-Dade County.  *See id.*, Exh. 10.  In this complaint, NHP Holding alleged that MercyHealth breached a noncompete agreement and that nonparty Doctorcare, Inc. tortiously interfered with a contract between MercyHealth and NHP Holding.  On September 23, 2005, Preferred Care Partners Holding Corp. ("PCP Holding") and Preferred Care Partners, Inc. ("PCP") filed an amended complaint as successors in interest and assignees of NHP Holding. *See id.*, Exh. 11.  This Amended Complaint also added claims against Defendant Esther Surujon for breach of the noncompete agreement and against Doctorcare Holding, LLC for tortious interference with the contract between MercyHealth and NHP Holding.

In this state court lawsuit, the plaintiffs alleged that on July 1, 2002, NHP Holding acquired Neighborhood Health Partnership Inc. ("NHP"), a for-profit health maintenance organization, through a merger with NHP's parent company, NHP Holding Company, Inc. ("NHP

Holding Company").  Prior to the merger, NHP Holding Company owned NHP and was co-owned by Dimension Physician Hospital Organization, Inc. ("Dimension") and JA Services, Inc. ("JASI").  Dimension itself was co-owned by six entities including Mercy Hospital PHO, Inc., which was jointly owned by Mercy Hospital Inc. and Defendant MercyHealth.

In March of 2002, NHP Holding entered into an Agreement of Merger with Dimension, JASI, and NHP Holding Company, Inc.  Plaintiffs in the state court lawsuit alleged that pursuant to "the Merger Agreement, Dimension, JASI, and each of the direct and indirect owners of Dimension - including MercyHealth - agreed to enter into a separate noncompetition agreement with NHP Holding at the time of closing."  *Id.*, Exh. 11 at 5.  Plaintiffs then alleged that MercyHealth breached this noncompetition agreement when "acting through its management and board of directors, [it] planned and launched DoctorCare for the purpose of competing with NHP by engaging in the Restricted Activity within the Restricted Area as defined by the Noncompetition Agreement."  *Id.*, Exh. 11 at 7.  It was alleged that Surujon who was the president of MercyHealth and Harkins who was chief operating officer of MercyHealth began setting up DoctorCare while they were still employed by MercyHealth.[1]

On October 14, 2005, while this action was proceeding in the state court, MercyHealth filed a voluntary petition for bankruptcy relief.  A final plan of reorganization was approved by the Bankruptcy Court on September 13, 2006.  *See id.*, Exh. 6.

In August 2006, after the expiration of the previous Executive Risk policies, Federal, Executive Risk's corporate parent, issued a Health Care Portfolio Policy, policy number 8170-

---

[1] It is unclear how all of these claims were resolved.  However, the claims asserted by PCP Holding and PCP against MercyHealth were settled and final summary judgment was granted in favor of Surujon.  *See* (D.E. No. 17, Exh. 7, Exh. A); (D.E. No. 21 at ¶ 16); (D.E. No. 24 at ¶ 16).

0109, to MercyHealth for August 19, 2006 to August 19, 2007 ("the Federal policy"). *See id.*, Exh. 5.

On December 6, 2006, MercyHealth filed suit against its former officers, Surujon and Harkins in the Eleventh Judicial Circuit in and for Miami-Dade County. *See id.*, Exh. 3. MercyHealth alleged that by violating the noncompete provision, Surujon and Harkins breached their fiduciary duties, that they were grossly negligent, that they were guilty of corporate waste or gross mismanagement, and that they committed the tort of conversion. This second state court complaint filed by MercyHealth alleged that its two former officers intentionally violated the noncompete agreement and set up DoctorCare for their own personal gain to the detriment of MercyHealth, resulting in the suit against MercyHealth and the company's eventual bankruptcy.

In a letter dated December 29, 2006, Surujon and Harkins sought coverage for this suit filed against them under the Federal policy. *See id.*, Exh. 4. In a letter dated January 8, 2007, Federal advised Surujon and Harkins that coverage was barred under the Federal policy. *See id.*, Exh. 12. Specifically, Federal found that the policy at issue excluded coverage for the suit brought by MercyHealth against Surujon and Harkins because such an action was a suit by one insured against another insured and was specifically excluded under section 8(a) of the subject policy. Federal also reserved "all rights under the Policy and available at law to disclaim on an additional and alternative basis, as other terms, conditions, exclusions, endorsements and provisions of the Policy are found to be applicable." *Id.*, Exh. 12 at 3. In a subsequent letter dated March 20, 2007, Federal reaffirmed its denial of coverage for the same reasons. *Id.*, Exh. 13. Finally, in a letter dated October 26, 2007, Federal again reaffirmed its denial of the claim based on the section 8(a) insured vs. insured exclusion and gave an additional reason for its

denial of coverage.  This additional reason for denial was that the claim was untimely made. Federal stated that the policy in effect when the claim was "first made" was actually the 2005 Executive Risk Policy.  Federal then stated that no coverage existed under this policy because it also contained an insured vs. insured exclusion and because the policy excluded claims based on the service of an insured person as a "director, officer, member or employee of any entity other than the Company." *Id.*, Exh. 14 at 6.  Federal also noted in its letter that MercyHealth's claim was untimely made as the policy required that written notice of the claim be provided "as soon as practicable" and here no notice was given of the claim until about fifteen months after it was first made. *Id.*, Exh. 14 at 9.

On October 26, 2007, Federal and Executive Risk filed the instant action seeking a declaration of non-coverage under their respective policies.  Federal and Executive Risk have now moved for summary judgment.  Defendant MercyHealth has cross-moved for summary judgment.  Defendants Surujon and Harkins have not responded to either motion.  The Court now considers both motions for summary judgment.

## II.  Legal Standard

A motion for summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  By its very terms, this standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48

(1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248; *Matsushita Electric Indus. Co.,* 475 U.S. at 586. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id*. at 255.

If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 2d 1428, 1438 (11th Cir. 1991). The moving party "'must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.'" *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F. 3d at 1438 (quoting *Chanel, Inc. v. Italian Activewear of Fla., Inc*., 931 F.3d 1472, 1477 (11th Cir. 1991)). *See also* Fed. R. Civ. P. 56(e).

In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the nonexistence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324. When the non-moving party bears the burden of proof, the moving

party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id*. at 323 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id*. at 324. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must "go beyond the pleadings and by [its] own affidavits or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. (quoting Fed. R. Civ. P. 56(e)). A non-moving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. Analysis

Plaintiffs and Defendant MercyHealth now respectively move for summary judgment. Plaintiffs argue that coverage for the action filed by MercyHealth against former officers Surujon and Harkins is barred under the 2005 Executive Risk Policy, the applicable policy, because of the insured vs. insured exclusion and the outside entity exclusion contained in the policy. Plaintiffs argue that the Federal Policy does not apply to the claim at issue because under the terms of that policy the claim was first made prior to the inception of the policy. In the alternative, Plaintiffs argue that even if the Federal Policy did apply, the insured vs. insured exclusion and the outside entity exclusion in this policy would also bar Defendants from recovering under the policy. After careful consideration, the Court finds that there are no genuine issues of material fact. The 2005 Executive Risk Policy is the applicable policy and the claims are barred under the plain language of the insured versus insured exclusion. The Court finds it unnecessary to reach the issue of the

outside entity exclusion.

"Under the *Erie* doctrine, a federal court adjudicating state law claims applies the substantive law of the state." *Ungaro-Benages v. Dresdner Bank AG*, 379 F. 3d 1227, 1232 (11th Cir. 2004). "The construction of insurance contracts is governed by substantive state law." *Provau v. State Farm Mut. Auto. Ins. Co.*, 772 F. 2d 817, 819 (11th Cir. 1985). Thus, in interpreting the insurance policies at issue in this case the Court applies Florida law.

The Florida Supreme Court has stated that "insurance contracts must be construed in accordance with the plain language of the policy." *Swire Pacific Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003). If "'the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and the [other] limiting coverage, the insurance policy is considered ambiguous.'" *Id*. (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)). Moreover, where a provision is considered ambiguous it is "construed in favor of the insured and strictly against the drafter." *Swire Pacific Holdings*, 845 So. 2d at 165.

However, "simply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous." *Id*. "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule apposite." *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 941 (Fla. 1979). Courts should not "rewrite contracts . . . [or] add meaning that is not present." *Id*.

Applying these rules to the Federal Policy and the 2005 Executive Risk Policy, the Court finds that the plain language of both policies excludes from coverage the claims against the former officer Defendants brought by Defendant MercyHealth in the state court litigation filed on December 6, 2006. First, as Plaintiffs argue, Defendants' claims are not covered under the

Federal Policy because they were first made prior to that policy's inception. The policy defines "Claim" as four different types of claims: a D&O Claim, an Organization Claim, an Employment Claim, and a Third Party Claim. All of these different types of claims are defined, among other things, as written demands for monetary damages or the service of a complaint in a civil proceeding against an insured for a "Wrongful Act."[2] The policy defines "Related Claims" as "all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events." (D.E. No. 17, Exh. 5 at 18). Section 16(j) of the Federal Policy provides:

> All Related Claims shall be treated as a single Claim first made on the date the earliest of such Related Claims was first made or on the date the earliest of such Related Claims was first made, or on the date the earliest of such Related Claims is treated as having been made in accordance with Subsection 18(b) of this coverage section, regardless of whether such date is before or during the Policy Period. No coverage shall be available for such Related Claims except under the policy in effect at the time when first such Claim was deemed made.

(D.E. No. 17, Exh. 5 § 16(j)).

Defendants have not responded to this argument. The Court finds after examining the policy and the nature of the claims asserted in the current state court suit by MercyHealth against its former officers and the nature of the claims in the prior state court suit asserted by NHP Holding, PCP Holding, and PCP against MercyHealth, that these claims are "Related Claims" as defined in the Federal Policy. The first suit brought against MercyHealth arose from the conduct of former officers Surujon and Harkins when they allegedly set up and managed DoctorCare, Inc.

---

[2] The policies at issue bold certain defined terms. The Court has deleted this emphasis throughout its Order.

and DoctorCare in violation of the noncompete agreement MercyHealth had with NHP Holding. *See* (D.E. No. 17, Exh. 11 at ¶¶ 24-27). The second suit for which Surujon and Harkins have sought coverage is a suit filed by MercyHealth against these individual officers, which alleges that their actions in establishing DoctorCare, Inc. and DoctorCare, among other things, violated their fiduciary duties to MercyHealth and resulted in the company declaring bankruptcy. *See* (D.E. No. 17, Exh. 3). Thus, it is clear that the two claims arose from "or in consequence of the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events."

Because the two suits are "Related Claims" under the policy, the only coverage available is that which was available under the policy in effect at the time when the first claim is deemed to have been made. Here, at the latest, the first claim was made when the amended complaint in the first suit was filed against MercyHealth. This amended complaint was filed on September 23, 2005. *Id.*, Exh. 11. The Federal Policy did not take effect until August 19, 2006. *Id.*, Exh. 5 at 1. Thus, the Federal Policy cannot provide coverage because the claim was made before its inception.[3]

The policy in effect during the relevant time period is the 2005 Executive Risk Policy. Plaintiffs argue that Defendants are excluded from coverage under this policy. Section III of the

---

[3] In the alternative, even if the Federal Policy did apply, any claim brought under this policy would also be barred by the insured vs. insured exclusion within this policy. The policy excludes claims "brought or maintained by, at the behest of, on behalf of, or in the name or right of any Insured in any capacity." (D.E. No. 17, Exh. 5 at 31). The analysis of such language in the Federal policy would be the same as the analysis of this language in the Executive Risk policy as discussed below. The Court notes that the parties have conceded in their filings that the insured vs. insured exclusion in the Federal Policy is virtually identical to the insured v. insured exclusion in the 2005 Executive Risk Indemnity Policy.

2005 Executive Risk Policy provides for exclusions.  The insured vs. insured exclusion in subsection III(E) provides that "[t]his Policy does not apply to any Claim by or on behalf of, or in the name or right of, the Company or any Insured Person."  The Company is defined as the insured parent corporation and any subsidiary created or acquired on or before the inception date of the policy.  (D.E. No. 17, Exh. 1 at § II(C)).  MercyHealth argues that this exclusion does not bar the claims asserted against the former officers by it in the state court lawsuit because it is a reorganized company and a different entity from the pre-bankruptcy MercyHealth which is "the Company" referred to in the policy.  This Court disagrees, finding that the plain language of the policy excludes the claims MercyHealth has brought against Surujon and Harkins from coverage.[4]

Here, the insured vs. insured exclusion bars any claims "by or on behalf of, or in the name or right of, the Company." The lawsuit against Surujon and Harkins by MercyHealth is clearly a claim asserted "on behalf of, or in the name or right of" the insured company in the policy. The claims asserted against Defendants Surujon and Harkins by MercyHealth relate to alleged breaches of duty to MercyHealth, which occurred before MercyHealth filed for bankruptcy.  In the state court complaint, MercyHealth acknowledges that these breaches occurred before they filed for bankruptcy and states that it has now emerged from bankruptcy and "the claims of MercyHealth against Sujuron and Harkins have been preserved and transferred to the reorganized MercyHealth."  (D.E. No. 17, Exh. 3 at ¶ 8).  The confirmed plan of reorganization provided the reorganized MercyHealth with these rights.  *See* (D.E. No. 17, Exh. 7, Art. VI(B)(I)) (stating that "the Reorganized Debtor . . . on behalf of the Estate, may enforce, any claims, rights and causes of

---

[4]Defendants have raised numerous other arguments based on alleged ambiguities in the language of the exclusion and bankruptcy law; however, the Court finds it unnecessary to address these other arguments as it finds the language in the exclusion is clear.

action that the Debtor or the Estate may hold against any entity."). *See also* (D.E. No. 17, Exh. 6) (confirming plan). Thus, it is unnecessary for this Court to discuss whether Defendant MercyHealth has become a new entity post-bankruptcy because in the state litigation Defendant MercyHealth is asserting the rights of the pre-bankruptcy entity which is the same entity identified as the "Company" in the 2005 Executive Risk Policy. *See Niemuller v. Nat'l Union Fire Ins. Co. of Pittsburgh,* Case No. 92 Civ. 0070, 1993 WL 546678, at *5 (S.D.N.Y. Dec. 30, 1993) (finding that an insured v. insured exclusion applied to a third party assignee).[5]  Accordingly, it is hereby:

---

[5]This Court acknowledges that courts have reached different results when considering whether a liquidator, trustee, or other persons associated with a bankrupt corporation are precluded from seeking coverage by an insured vs. insured exclusion. *Compare Alstrin v. St. Paul Mercury Ins. Co.*, 179 F. Supp. 2d 376 (D. Del. 2002) (finding that the "'insured v. insured' exclusion should not apply to claims brought by a bankruptcy Estate Representative against the former directors and officers of the Debtor where the Debtor is the insured entity, because the Debtor's Estate Representative . . . and the Debtor . . . are separate entities."); *Am. Cas. Co. Of Reading Pa. v. Sentry Federal Savings Bank*, 867 F. Supp. 50 (D. Mass. 1994) (finding that a conservator of a Receivership's claims asserted against directors and officers of a Receivership were not barred from coverage under insured vs. insured exclusion as the conservator was not the "Institution" named in the policy); *In re Pintlar Corp.*, 205 B.R. 945 (Bankr. D. Idaho 1997) (finding that litigation trustees were not acting for the benefit of the corporation but for the benefit of the corporation's creditors and thus their claims against former officers and directors were not barred from coverage under insured v. insured exclusion found in Chapter 11 debtors' insurance policy) *with In re R.J. Reynolds*, 315 B.R. 674 (Bankr. W.D. Va. 2003) (finding that bankruptcy trustee's suit against debtor's former officers was brought as assignee and was excluded under insured vs. insured exclusion); *Nat'l Union Fire Ins. Co. v. Olympia Holding Corp.*, No. 1:94-CV-2081, 1996 WL 33415761 (N.D. Ga. June 4, 1996) (finding a bankruptcy trustee's claims against the former officers were excluded under the insured v. insured exclusion as the trustee "can only assert claims against insureds that belong to" the company and thus "there is no legal distinction between the trustee and the company); *Reliance Ins. Co. v. Weis*, 148 B.R. 575 (E.D. Mo. 1992) (finding that a plan committee of bankrupt corporation's action against former officers of bankrupt corporation was excluded from coverage under insured vs. insured exclusion as action was on the behalf of bankrupt corporation); *Powell v. American Cas. Co. of Reading Pa.*, 772 F. Supp. 1188 (W.D. Okla. 1990) (finding that an insured v. insured exclusion applied to claims which arose when the FDIC brought an action against former directors and officers of a bank as the FDIC "stands in the shoes of the Security Bank in prosecuting claims.").

The Court finds that the reasoning of the cases which found the exclusion applicable

**ORDERED and ADJUDGED** that

1. Plaintiffs Federal Insurance Company and Executive Risk Indemnity Inc.'s Motion for Summary Judgment (D.E. No. 17) is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 56, a final judgment shall be entered separately.

2. Defendant MercyHealth, Inc.'s Cross-Motion for Summary Judgment (D.E. No. 20) is **DENIED**.

3. Plaintiffs Federal Insurance Company and Executive Risk Indemnity Inc.'s Motion for Leave to File a Sur-Reply (D.E. No. 34) is **GRANTED**. The sur-reply is accepted as filed and was considered in ruling on this motion.[6]

4. This Case is **CLOSED** and all pending motions are **DENIED** as **Moot**.

DONE AND ORDERED in Chambers at Miami, Florida, this 29 day of July, 2008.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Brown
All Counsel of Record
Esther Surujon, *pro se*
John Harkins, *pro se*

---

persuasive; however, it unnecessary to discuss the application of these cases as this Court finds the plain language of the specific exclusion at issue in this case clearly applies to MercyHealth's claims. In addition, this case does not concern a suit by a liquidator, a trustee, or a receiver. Rather, this action is a suit by a reorganized debtor.

[6] Although the Court considered the sur-reply, it notes that it did not find anything stated in Plaintiffs' sur-reply to be outcome-determinative. However, the filing of the sur-reply was appropriate as Defendant inappropriately raised new arguments and submitted new evidence in its reply brief.